UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA       :
                               :
                               :
                               :
v.                             :        Case No.:    5:23-CR-81-JAL-PRL
                               :
                               :
KINGSLEY WILSON                :
_____ :

**<u>DEFENDANT KINGSLEY WILSON'S
SENTENCING MEMORANDUM</u>**

COMES NOW, the Defendant, KINGSLEY WILSON, by and through his
undersigned counsel, and files this his sentencing memorandum and in support
states as follows:

<u>Introduction</u>

On Thursday, February 15, 2024 at 10:30 am, the Defendant will stand in
judgment before this Honorable Court for the crimes he committed - and more
importantly for the crimes he has accepted full responsibility *for* committing.

The Defendant nor his counsel will minimize the negative effect the
Defendant's criminal conduct has had and will continue to have upon the
community in which he lives, the judicial system, state and federal law
enforcement agencies, his family, his friends, and himself.

This is a serious case.

The Defendant will allocate and when he does, he will blame only himself. Quite frankly, the Defendant is humiliated and ashamed. Sentencing will most certainly be a difficult day for the Defendant, his family, and his friends.

However, a sentencing is not meant to punish alone. The Defendant offers this sentencing memorandum in mitigation of his criminal conduct to assist this Honorable Court in fully assessing this case so that this Honorable Court may reach a sentence that is sufficient but not greater than necessary under law.

## I. Presentence Investigation Report

Undersigned counsel and the Defendant do not object to the factual accuracy of the presentence investigation report.

Undersigned counsel and the Defendant do not object to the legal accuracy of the presentence investigation report.

## II. Sentencing Process

In order to arrive at a sentence that is sufficient but not greater than necessary, and to comply with the purposes set forth in paragraph two of Title 18 United States Code Section 3553(a), the Defendant understands this Honorable Court will first calculate the Defendant's federal sentencing guideline sentence range, next consider any departures based on the criteria set forth in the federal sentencing guidelines from Sections 5K1.1 to 5K3.1, and, finally, consider whether the sentence imposed should be different from either the federal sentencing

guideline sentence or the departure sentence (if any), after considering the factors set forth in 18 United States Code Section 3553(a).

- The advisory federal sentencing guidelines.

- Any applicable departures.

- Any applicable variances.

**III.  Title 18 United States Code Section 3553(a)**

Prior to the United States Supreme Court decisions in *United States v. Booker*, 543 U.S. 220, 245-67 (2005), *Rita v. United States*, 127 S.Ct. 2456 (2007), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38, 53 (2007), the federal sentencing guidelines were mandatory, not advisory, on a federal district court judge. As we all know, because of the above cases, the federal sentencing guidelines are now advisory in nature and equal in weight to the Title 18 United States Code 3553(a) factors.

The Title 18 United States Code Section 3553(a) factors that a district court judge must take into equal consideration to the federal sentencing guidelines are as follows:

- The nature and circumstances of the offense and the history and characteristics of the defendant; 18 United States Code Section 3553(a)(1); and

- The need for the sentence imposed; 18 United States Code Section 3553(a)(2); and

  - to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

  - to afford adequate deterrence to criminal conduct.

  - to protect the public from further crimes of the defendant.

  - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

- The kinds of sentences available; 18 United States Code Section 3553(a)(3); and

- The need to avoid unwarranted disparity among defendants with similar records and similar crimes; 18 United States Code Section 3553(a)(6); and

- The need to provide restitution to any victims of the offense. 18 United States Code Section 3553(a)(7).

There is no doubt the Defendant committed the crimes set forth in his presentence investigation report. As a result, the Defendant knows, and most importantly accepts, that now is the time that he must be punished for his criminal actions. But as this Honorable Court certainly knows better than anyone, a federal sentencing is not designed to punish alone. If so, there would be no need for a

presentence investigation report, sentencing submissions by the parties, and the sentencing hearing itself.[1] Instead, it would be like 2004 and before – quick, painless, and expedient – but also unjust and unfair.

The Defendant, like all other federal defendants waiting to see how much of their lives will be taken from them at sentencing, is exactly the person for whom an individualized sentencing is designed. The Defendant is more than just his criminal actions in this case. His story deserves to be heard and considered. The Defendant offers the following in support of his request for a reasonable sentence.

A.      Mitigation Variance Analysis

Here are the relevant Section 3553(a) mitigating factors this Honorable Court should consider:

**This Honorable Court should consider the
mitigating history and characteristics of the Defendant.
18 United States Code Section 3553(a)(1).**

**This Honorable Court should consider the mitigating need for the sentence
imposed to provide the Defendant with needed educational or vocational
training, medical care, or other treatment in the most effective manner.
18 United States Code Section 3553(a)(2).**

*Personal and Family History*

Kingsley Samuel Richard Wilson was born on June 9, 1988, in Nassau, Bahamas, to Elizabeth Walkine and Kingsley Wilson. He is the oldest of four children, and he grew up in a good and stable environment. The family was deeply rooted in their Christian faith, and Kingsley's upbringing was centered around the church.

---

[1]Undersigned counsel is aware this Honorable Court is well-versed in this area of the law and will now move forward in this sentencing memorandum to an application of fact and law analysis as a result.

The marriage of Kingsley's parents was harmonious, marked by very few arguments, and they provided the essentials of food, clothing, and shelter for their children. All the children knew they were loved because their parents demonstrated love through their words and actions. This stability and the lack of material deprivation contributed positively to Kingsley's early development.

Kingsley's life changed when his parents divorced when he was around 13 or 14 years old. Following the divorce, he continued to live with his mother, who played the role of disciplinarian in the family. Her disciplinary methods changed from spanking when Kingsley was younger to grounding as he grew older.

It is notable that Kingsley's parents' divorce did not seem to result from a tumultuous relationship, and he was not subjected to any abuse or neglect by either of them. This shows that his parents prioritized his well-being despite their separation.

Throughout his upbringing, Kingsley lived in safe neighborhoods. Initially, his family resided in a single-family home, later moving to an apartment. After his mother remarried when Kingsley was 16 or 17, they moved back to a single-family home. Kingsley had a positive relationship with his neighbors during his time in single-family homes, but he did not get to know his neighbors while living in apartments.

Kingsley's personal life took a significant turn when he moved to the United States in 2016, where he married a United States citizen named Rosalie Persaud. Kingsley became a resident alien by virtue of his marriage to Rosalie. Kingsley and Rosalie had a son, Kyro, but unfortunately, their marriage encountered challenges and is now pending a divorce due to family and other issues.

In 2018, Kingsley became a father when he and his girlfriend, Dereka, welcomed a son into the world. While they never married, they maintain an amicable relationship for the sake of their child, even though Dereka resides in the Bahamas.

Currently, Kingsley is in a relationship with a woman named Vivianna and hopes to continue this relationship, even if he faces imprisonment in connection with his criminal case. His son lives with Vivianna, and he trusts that she will care for him during Kingsley's potential prison time.

Analysis

Kingsley's life has seen its share of ups and downs, from a stable upbringing in a religious home to the challenges of divorce and legal issues. Throughout these experiences, his relationships with family members and partners have played a central role in shaping his journey in a largely positive way.

*Educational History*

Kingsley attended school in the Bahamas. Throughout school, he managed to maintain a good academic and disciplinary record. He was never expelled or subject to significant discipline, and he never had to repeat any grades or attend special education classes. Fortunately for him, Kingsley never faced any teasing or bullying, which contributed to a positive and supportive learning environment for him.

During his middle school years, Kingsley's interests extended beyond the classroom. He discovered a passion for track and field and decided to pursue it as an extracurricular activity. As he transitioned to high school, Kingsley continued his involvement in track and field, even briefly participating in the high school track and field team.

Despite completing the twelfth grade, Kingsley did not meet the necessary grade point average requirements to graduate and earn his high school diploma.

Analysis

Kingsley demonstrated consistent academic performance without needing any special educational assistance or experiencing disciplinary issues. This highlights his commitment to his studies and his ability to navigate through the school system successfully.

Kingsley's involvement in track and field indicates that he possesses dedication, discipline, and a willingness to pursue his interests outside of the classroom.

Unfortunately, Kingsley experienced a setback in his education when he failed to meet the GPA requirements for graduation. His current interest in obtaining a GED

or high school equivalency demonstrates a determination to overcome this setback and further his education. It is important to acknowledge that educational journeys can be non-linear, and Kingsley's willingness to continue his education is a positive step toward his future goals.

*Work History*

Kingsley's employment history began right after he completed high school at the age of 17. He entered the workforce with a focus on fire alarms and low-voltage electrical work, indicating an early interest and aptitude in technical fields. This initial step laid the foundation for his subsequent career in the United States.

Upon moving to the United States, Kingsley continued to pursue his occupation as a fire alarm technician and low-voltage technician. This demonstrates his commitment to his chosen field, as he sought similar employment opportunities in a new country.

Kingsley eventually found a position at Southeast Wiring Solutions, where he remained for five years. This extended tenure demonstrates a degree of stability and dedication to his work. He ultimately decided to leave this job because of declining business and a lack of career advancement and responsibility. This decision indicates a desire for professional growth and a willingness to take risks to achieve it.

After parting ways with Southeast Wiring Solutions, Kingsley worked for various companies. He worked at Smart Loop Pro, CLF, and eventually Kissimmee Holdings. His employment at Kissimmee was short-lived, as he had been working there for only a few months when he was arrested.

Analysis

Kingsley's employment history reflects a pattern of commitment to his technical field, especially in fire alarms and low-voltage electrical work. His initial work right out of high school shows an early interest and a vocational inclination. Moving to a new country and continuing this career path demonstrates adaptability and a willingness to embrace change.

Kingsley's decision to leave Southeast Wiring Solutions can be seen as a desire for professional advancement. He felt constrained by the lack of growth opportunities

and sought more responsibility and higher pay. This ambition is a positive trait, indicating a drive for personal and career development.

Overall, Kingsley's employment history showcases a mix of ambition, adaptability, and the pursuit of professional growth.

*Physical Health*

Kingsley enjoys very good physical health. Fortunately, he has never suffered from any medical problems, major illnesses, or surgeries. Seasonal allergies, however, present a minor disruption to his otherwise excellent health. During certain times of the year, he contends with allergies that trigger major headaches. Although these allergies can be bothersome, they do not constitute a major health concern and can be managed with over-the-counter medications.

Kingsley is not under a physician's care, and he takes no daily medications. He has no disabilities or physical limitations.

Analysis

Kingsley's physical health can be characterized as generally excellent. His physical condition is characterized by the absence of any major medical issues, the limited reliance on medication, and the lack of disabilities or physical limitations.

*Mental Health*

Kingsley has never suffered from mental health problems and has never been diagnosed with mental illness. He has never attempted suicide or contemplated suicide.

Kingsley is understandably distressed by his current circumstances, and at some point, he might benefit from counseling to help him process his feelings and emotions relating to his criminal case.

Analysis

Kingsley's mental health history presents a picture of apparent well-being. He has not experienced any mental health problems, and he has never entertained suicidal ideations. Kingsley's absence of mental health problems may not be the full story, however. A person's mental health status can be fluid and subject to change over

time. Factors such as stress, trauma, or major life events can impact a person's mental well-being. Kingsley might benefit from an assessment to determine any detrimental impact his arrest and detention has had on his mental health.

*Alcohol and Substance Abuse and Gambling*

Approximately 19 years ago, Kingsley's experimentation with marijuana began. Initially, he used it infrequently, driven by curiosity and peer pressure. However, over time, his use of marijuana evolved into a daily habit, signaling a concerning progression in his substance abuse.

While Kingsley has not used marijuana for several months and does not feel that he requires drug treatment at this moment, he is willing to participate in an evaluation and treatment if necessary. This indicates his awareness of the potential risks associated with his past usage and suggests a sense of responsibility towards his own well-being and a recognition of the need for professional guidance when it comes to substance abuse.

Importantly, Kingsley's history is not marked by other drugs, which is a positive aspect of his situation. His limited use of alcohol during social occasions, rather than excessive or habitual consumption, further distinguishes his substance use patterns. It shows that he has a degree of control over his alcohol consumption and that it does not currently pose a significant concern.

Kingsley has not history of gambling, indicating that he has managed to steer clear of another potential addictive behavior, which often co-occurs with substance abuse.

Analysis

Kingsley's substance abuse history presents a classic case of how experimentation with a substance can escalate into problematic daily use over time. His willingness to participate in an evaluation and treatment, if necessary, is an encouraging sign. It reflects a level of insight into the potential risks associated with his past marijuana use and a proactive approach to addressing these issues.

The fact that Kingsley has no history of using other drugs apart from marijuana is a positive aspect of his situation. This suggests that his issues with substance abuse may be isolated to marijuana, making the potential for recovery more manageable.

Kingsley's history of substance abuse, while concerning, presents opportunities for positive change. His willingness to engage in evaluation and treatment, if necessary, along with his limited use of alcohol and absence of gambling issues, highlights his potential for recovery and a healthier future.

In Kingsley's case, early intervention and support is important to prevent the progression of addiction and its associated risks.

## IV.    Sentencing Position

Once this Honorable Court calculates the Defendant's final offense level under the advisory federal sentencing guidelines, considers any appropriate departures, and considers the factors set forth in 18 United States Code Section 3553(a), the Defendant respectfully submits a prison sentence greater than the advisory federal sentencing guideline range is greater than necessary and thus unreasonable.

However, the Defendant understands and accepts that he does not have the final say on the issue of incarceration. Because he pled guilty, the Defendant understands and accepts that the final decision regarding his fate rests with this Honorable Court. All the Defendant can do is make his case in this written submission and again in open court at his sentencing hearing.

## **CONCLUSION**

WHEREFORE, the Defendant, KINGSLEY WILSON, by and through his undersigned counsel respectfully requests this Honorable Court will grant the requested relief/and or any other relief deemed necessary.

Respectfully submitted,

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210
511 West Bay Street
Suite 330
Tampa, Florida 33606
T:     (813) 228-6989
E:     mjo@markjobrien.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on January 17, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

By: /s/ Mark J. O'Brien
Mark J. O'Brien